RECEIVED
IN LAKE CHARLES, LA.

JAN -9 2013

TONY R. MOORE, CLERK
BY_____
            DEPUTY

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAKE CHARLES DIVISION

| | | |
|---|---|---|
| WESLEY SMITH | : | DOCKET NO. 2:12-cv-2012-PM-KK |
| VS. | : | JUDGE PATRICIA MINALDI |
| SWIFT TRANSPORTATION CO. OF ARIZONA, LLC, ET AL. | : | MAG. JUDGE KATHLEEN KAY |

## MEMORANDUM RULING

Before the court is the defendants,' Christopher R. Klann and Swift Transportation Company of Arizona, LLC ("Swift") Motion to Dismiss or Alternatively Motion to Stay and Compel Arbitration [Doc. 7]. The plaintiff, Wesley Smith, filed a response in opposition [Doc. 12], and the defendants filed a reply [Doc. 16]. For the reasons stated herein, the defendants' motion will be GRANTED.

## BACKGROUND

The plaintiff filed this action in the Fourteenth Judicial District Court for the Parish of Calcasieu, Louisiana, against the defendants, Swift, "XYZ Insurance Company," and Christopher R. Klann, asserting claims against them for damages allegedly sustained in a tractor-trailer accident on June 1, 2011 in Lake Charles, Louisiana.[1] The defendants then removed this case to this court on the basis of diversity jurisdiction under 28 U.S.C. § 1332.[2]

At the time of his tractor-trailer accident, Smith was an owner/operator of an 18-wheeler tractor-trailer.[3] He had entered into a Contractor Agreement with Swift on May 16, 2008, under

---

[1] See generally Pl.'s Compl , [Doc. 1-1].

[2] Not. of Removal, [Doc. 1].

[3] Defs.' Mot. to Dismiss, [Doc. 7-1], at pg. 2; Pl.'s Resp. to Defs.' Mot. to Dismiss, [Doc. 12], at pg. 1.

which he would transport freight for Swift, with Swift reimbursing him pursuant to the agreed-upon mileage reimbursements.[4]   Later, the parties renewed the Contractor Agreement (with a new reimbursement rate schedule) on June 8, 2009, and this was the Contractor Agreement in effect at the time of Smith's accident.[5]

As part of the Contractor Agreement, Swift required Smith to maintain his own insurance, provide and supervise employees as necessary, and cover his employees under his worker's compensation program.[6]   The Contractor Agreement also contained a clause under which Smith agreed to indemnify, defend and hold Swift harmless for any and all claims involving any injury or property damage he might suffer.[7]   Further, the Contractor Agreement included a forum selection clause, under which any legal proceeding (including arbitration) arising between Smith and Swift would be filed and/or maintained in either state or federal court in Phoenix, Arizona (where Swift is headquartered).[8]   In conjunction with this, the Contractor Agreement contained a choice of law clause which mandated that Arizona law would govern any disputes.[9]   Finally, the Contractor Agreement contained an arbitration clause which mandated that any dispute arising under or in any way related to the Agreement would be subject to

---

[4] *See generally* "Original Contractor Agreement," Ex. A to Defs.' Mot. to Dismiss, [Doc. 7-2] at pg.4.

[5] *See generally* "New Contractor Agreement," [Doc. 7-2], at pgs. 25-41.

[6] *Id.* at ¶ 7, pgs. 27-28.

[7] *Id.* at ¶ 8, pgs. 28-30.

[8] *Id.* at ¶ 33, pg. 33.  The forum selection clause reads, in relevant part:

> Choice of Forum. The parties agree that any legal proceedings between the parties arising under, arising out of, or relating to the relationship created by the Agreement, including arbitration proceeding discussed above, shall be filed and/or maintained in Phoenix, Arizona or the nearest location in Arizona where such proceedings can be maintained. The parties specifically waive any defense as to personal jurisdiction in any federal or state court in Arizona.

[9] *Id.* at ¶ 24, pg. 33.

binding arbitration by the parties, in accordance with the Federal Arbitration Act and/or Arizona's Arbitration Act.[10]

As a part of his contract with Swift, Smith also agreed to participate in the Mentor Program, under which Smith would serve as a mentor to driver-trainees learning to operate tractor-trailers.  Smith signed a "Mentor Addendum," which became a part of his Contractor Agreement.[11]  This Addendum provided that Swift would compensate him for mentoring trainees by teaching them general driving skills and training them to drive a tractor-trailer.[12]  The Mentor Addendum included a clause which required Smith to indemnify, defend, and hold Swift harmless from any suit or claim arising against Swift from any damage suffered by Smith in connection with the mentoring program.[13]

Pursuant to this Mentoring Program, on June 11, 2011, Smith was training Christopher Klann, with Klann at the wheel of Smith's tractor-trailer.[14]  Smith alleges that because Klann had "physical and mental infirmities," he negligently operated the vehicle, which led to Klann crashing the tractor-trailer near the intersection of I-210 and I-10 in the Lake Charles area, causing both personal injuries and property damage to Smith.[15]

---

[10] *Id.* at ¶ 25, pg. 33.  The arbitration clause reads, in relevant part:

> Arbitration. All disputes and claims arising under, arising out of or relating to this agreement, including an allegation of breach thereof, and any dispute arising out of or relating to the relationship created by the Agreement, including any claims or disputes arising under or related to any state or federal law, statutes, or regulations, and any dispute as to the rights and obligation of the parties, including the arbitrability of disputes between the parties, shall be fully resolved by arbitration in according with Arizona's Arbitration Act and/or the Federal Arbitration Act.

[11] *Id.* at pgs. 22-23.

[12] *Id.*

[13] *Id.* at pg. 22.

[14] [Doc. 7-1] at pg. 6; [Doc 12] at pg. 1.

[15] [Doc. 1-1] at pg. 1.

The defendants now bring their Motion to Dismiss.  First, they argue that the Contractor Agreement's forum selection clause is controlling, and thus Smith must instead bring his claims in Phoenix, Arizona.[16]  Second, they argue that the dispute between the parties must be stayed and go through arbitration, as the provisions of the Federal Arbitration Act are expressly incorporated into the terms of the contract between Smith and Swift.[17]  They note that the Contractor Agreement contains a binding and enforceable arbitration clause, and that the scope of the arbitration agreement includes Smith's claims for personal injury and property damage[18]  Finally, the defendants assert that Smith's claims are alternatively governed by the Arizona Arbitration Act, which requires dismissal and a stay of further proceedings.[19]

In response, Smith argues that the forum selection clause and arbitration clause are not binding here, because he has sued the defendants for "things not covered by the contractual relationship between the parties or arising from the contract."[20]  Smith alleges that it was Swift's failure to properly screen Klann (which allegedly would have alerted Swift to the fact that Klann was using drugs and was subject to seizures), and that Smith was not given the ability to select his own mentees.[21]  Extrapolating from this, he argues that his cause of action actually arises out of Swift's negligent hiring of Klann, a claim which allegedly falls outside of the provisions of the Contractor Agreement.[22]

---

[16] [Doc. 7-1] at pgs. 7-8.

[17] *Id.* at pgs. 8-9.

[18] *Id.* at pgs. 9-12.

[19] *Id.* at pg. 13.

[20] [Doc. 12] at pg. 2.

[21] *Id.* at pg. 3.

[22] *Id.*

Further, Smith argues that transferring the case to Arizona would result in "undue hardship for all parties involved," since his accident happened in Lake Charles, the police officers who investigated the accident are in Lake Charles, and Smith's treating physicians post-accident are all in Lake Charles.[23]  Smith also alleges that the arbitration clause included in the Agreement does not apply to "the duty of Swift to select and hire qualified persons to enter their mentor program."[24]  Finally, he argues that Interstate Motor Common Carrier Act renders the indemnity clause in the Contractor Agreement invalid.[25]

In their reply, the defendants argue that Smith agreed to the forum selection clause in the Contractor Agreement, and that he has offered no proof that the forum selection clause is inapplicable or invalid.[26]  They further note that Arizona would not be an inconvenient forum, since Swift is headquartered in Arizona, all of the Swift witnesses are in Arizona, and all of the documents and evidence associated with the mentor program and Contractor Agreement are in Arizona.[27]  Further, the defendants argue that the Contractor Agreement's arbitration clause is broad enough to cover this dispute, particularly because, aside from his claim that Swift failed to screen mentee candidates, Smith makes several general negligence claims in his petition which fall directly under the provisions of the Contractor Agreement.[28]  Finally, they note that Smith's

---

[23] *Id.* at pgs. 3-4.

[24] *Id.* at pg. 5.

[25] *Id.*

[26] Defs.' Reply, [Doc. 16], at pgs. 2-3.

[27] *Id.* at pg. 3.

[28] *Id.* at pgs. 4-5.

reliance on the Interstate Motor Common Carrier Act is misplaced and has no bearing on the

arbitration or forum selection clauses in the Contractor Agreement.[29]

## LEGAL ANALYSIS

I.      **Procedural Treatment of a Motion to Dismiss Pursuant to a Forum Selection Clause**

As a threshold matter, the undersigned must delineate the proper procedural treatment of

the defendants' motion to dismiss pursuant to a forum selection clause. The defendants argue in

their motion that, based on the forum selection clause (which designates Arizona as the only

permissible forum), Smith's claim was filed in an improper forum, and thus dismissal is proper

under 28 U.S.C. § 1404.[30]  Up until recently, "[t]he Fifth Circuit [had] declined to address the

'enigmatic question of whether motions to dismiss on the basis of forum selection clauses are

properly brought as motions under Fed. R. Civ. P. 12(b)(1) [or] 12(b)(3).'"  *Haynsworth v. The*

*Corporation,* 121 F.3d 956, 961 (5th Cir. 1997).  Most district courts in the Fifth Circuit

followed the direction of *Mitsui & Co. (USA), Inc. v. MIRA M/V,* 111 F.3d 33 (5th Cir. 1997), in

which the Fifth Circuit, without commenting on the district court's procedural choice, affirmed a

district court's granting of a Rule 12(b)(3) motion to dismiss for improper venue based on a

forum selection clause  *See Ambraco, Inc. V. M/V CLIPPER FAITH,* no. 06-9966, 2007 WL

1550960 at *1 (E.D. La., May 25, 2007) (holding that "since the Fifth Circuit has accepted Rule

12(b)(3) as a proper method for seeking dismissal for improper venue based on a forum selection

clause, the Court need not decide whether [a] Rule 12(b)(1) motion . . .is appropriate.").

Very recently, the Fifth Circuit shed some light on this procedural issue in *In re Atlantic*

*Marine Construction Company, Inc.,* no. 12-50826, 2012 WL5835832, --F.3d -- (5th Cir., Nov.

---

[29] *Id.* at pgs. 7-8.

[30] [Doc. 7-1] at pg. 6.

19, 2012). In *Atlantic Marine,* a contractor entered into a Subcontract Agreement with a subcontractor to construct a building in Fort Hood, Texas. *Id.* at *1. The Agreement contained a forum selection clause providing that disputes would be litigated either in state or federal court in Norfolk, Virginia. *Id.* When the contractor breached the Agreement, the subcontractor sued the contractor in the Western District of Texas, ignoring the mandates of the forum selection clause. *Id.* The contractor moved to dismiss the suit under Rule 12(b)(3) and 28 U.S.C. § 1406, and argued in the alternative that the case should be transferred pursuant to 28 U.S.C. § 1404(a). *Id.* The district court denied the contractor's 12(b)(3) and §1406 motion, finding that § 1404(a) was the proper vehicle to address a motion to dismiss or transfer pursuant to a forum selection clause, and denied the request to transfer. *Id.* The contractor petitioned the Fifth Circuit for a writ of mandamus directing the district court to dismiss the case or transfer it to federal court in Norfolk, Virginia. *Id.*

Judge Higginbotham first explained the difference between a § 1404(a) case and a § 1406 case, and how these issues were implicated when forum selection clauses came into play:

> [The contractor] first argues that the district court clearly abused its discretion by using § 1404(a), instead of Rule 12(b)(3) and § 1406, to enforce the contractual forum-selection clause. We begin with a brief explanation of the relevant statutory framework. Section 1391 governs whether venue is proper in a given federal district. Rule 12(b)(3) and§ 1406(a) provide for dismissal or transfer of an action that has been brought in an improper venue. By contrast, when the action has been brought in a proper venue, section 1404 provides for transfer of the action within the federal system to another federal venue where the action could have been brought. Thus, the determination of whether § 1406 or § 1404(a) applies turns on whether venue is proper in the court in which the suit was originally filed. If venue is improper in that court, then § 1406 or Rule 12(b)(3) applies. If venue is proper in that court, then § 1404(a) applies. In turn, the choice between Rule 12(b)(3) and § 1406 on the one hand and § 1404 on the other depends on whether private parties can, through a forum-selection clause, render venue improper in a court in which venue is otherwise proper under § 1391. Federal circuit courts are divided on the issue.

*Id.* (footnotes and citations omitted).

Judge Higginbotham then noted that the Fifth Circuit would adopt the rule that the majority of district courts followed: when a forum selection clause identifies a specific federal forum or allows the contracting parties to select federal courts in a different forum, § 1404(a) is the proper vehicle for enforcing such a clause. *Id.* at *2. He noted that the Supreme Court's ruling in *Stewart Organization, Inc. v. Ricoh Corp.,* 487 U.S. 22,108 S.Ct. 2239,101 L.Ed. 2d 22 (1988) supported this rule, and "'strongly implies that Congress' determination of where venue lies cannot be trumped by private contract and that, therefore, a forum selection clause cannot render venue improper in a district if venue is proper in that district under federal law.'" *Id.* (citing 14D Charles A. Wright & Arthur Miller, Federal Practice and Procedure § 3803.1 (3d.ed. 2004)).

Judge Higginbotham then explained situations where Rule 12(b)(3) and § 1406 were instead the proper vehicle to address a motion to dismiss under a forum selection clause:

> Fifth Circuit precedent [establishes] that dismissal under Rule 12(b)(3) is the proper approach when a forum-selection clause designates an *arbitral,* foreign, or state court forum. When a forum-selection clause designates an *arbitral,* foreign, or state court forum, a district court does not have the option of transferring the case to the designated forum because § 1404(a) and § 1406 only allow for transfer within the federal system. Because dismissal is the only available option for the district court in those cases, dismissal is the proper remedy. By contrast, this Court has implied that dismissal is inappropriate when transfer pursuant to § 1404(a) is available, as is the case when a forum-selection clause designates a federal forum.
>
> ... In short, *Stewart* did hold that § 1404 is always the proper approach when the parties have entered into a contractual forum-selection clause. The choice between §1404 and § 1406 depends on whether venue was statutorily proper under § 1391 in the forum where the action was initially filed. A forum-selection clause is properly enforced via §1404(a) as long as venue is statutorily proper in the district where suit was originally filed and as long as the forum-selection clause elects an alternative federal forum. When the forum-selection clause designates an *arbitral,* foreign, or state court forum, the federal district court is without power to transfer and thus must dismiss the case as long as it determines the forum-selection clause is enforceable.

*Id.* (footnotes and citations omitted, emphasis added).

Thus, as per *Atlantic Marine,* the undersigned must conduct a two-part inquiry in this case, first assessing whether the forum selection clause is valid and applicable to the plaintiff's claim. If the answer to this inquiry is yes, then the undersigned must determine whether the forum selection clause provides for transfer to a different federal venue, which would allow for application of the § 1404(a) framework to the instant case, or else does *not* provide for transfer to a federal venue, which would mandate dismissal under § 1406 and Rule 12(b)(3).

## II.     Validity and Applicability of Forum Selection Clause

The parties' main contentions center around whether the terms of the Contractor Agreement (most importantly, the forum selection clause and the arbitration clause) are valid and controlling on Mr. Smith's claims.

### A. Validity of the Forum Selection Clause

In the Fifth Circuit, federal law determines whether a forum selection clause is valid in both diversity and federal question cases. *Haynsworth,* 121 F.3d at 962.  Forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances." *MIS Bremen v. Zapata Off-Shore Co.,* 407 U.S. 1, 10, 92 S.Ct. 1907, 1913, 32 L. Ed. 2d513 (1972).  Enforcement of a forum-selection clause may be unreasonable where:

> (1) [T]he incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of a forum selection clause would contravene strong public policy of the forum state.

*Haynsworth,* 121 F.3d at 963 (quoting *Carnival Cruise Lines, Inc. v. Shute,* 499 U.S. 585, 595,

111 S.Ct. 1522, 113 L Ed.2d 622 (1991)).  The party arguing against enforcement of the forum-

selection clause bears a "heavy burden" to prove that its enforcement is unreasonable.

*Bremen,* 407 U.S. at 10, 92 S.Ct. at 1907.

      First, Smith attacks the reasonableness of the forum selection clause by arguing that he

"had no hand in writing these agreements, Swift wrote them in their entirety. . . Smith was not a

sophisticated negotiator; he is a truck driver. Swift is a national corporation."[31]  Essentially, he

argues that the unequal bargaining power between the parties led to him agree to unfair terms,

including the forum selection clause.

      This argument does not hold water in light of the Supreme Court's holding in *Carnival*

*Cruise Lines.* In *Carnival Cruise Lines,* the Supreme Court found that Carnival Cruise's choice

of Florida as the sole forum to resolve disputes between itself and its customers was reasonable.

499 U.S. at 593.  This was so even though the plaintiffs, who had suffered personal injuries

while on a Carnival Cruise Ship off the coast of Mexico, had not even been given the chance to

negotiate the forum selection clause included in the terms of their "form ticket contract."  *Id.*

Supreme Court specified several different reasons why it may be reasonable for a company to

include a non-negotiable forum selection clause in its contract: limiting fora where it is subject to

suit, the salutary effects of dispelling confusion about where suits may be brought and defended,

and the existence of benefits passed on to third parties as a result of the savings generated by

limiting the fora where it could be sued. *Carnival Cruise Lines,* 499 U.S. at 593-94, 111 S.Ct. at

1522.  The Supreme Court found, therefore, that despite the lack of negotiation on the forum

selection clause, Florida was a reasonable forum because it was not selected "as a means of

discouraging cruise passengers from pursuing legitimate claims," because Carnival Cruise Lines'

---

[31] [Doc. 12] at pg. 3.

principal place of business was in Florida, and because many of its ships launched from Florida ports. *Id.* at 595.

In this case, Swift is a trucking company headquartered in Arizona. Presumably, it has independent contractors just like Smith operating trucks all over the United States. Without a forum selection clause, Swift could potentially be subject to litigation in any number of different fora across the United States. Given this possibility, the undersigned finds that the forum selection clause is reasonable, despite Smith's contention that there might not have been any meaningful negotiation between the parties on this clause. Arizona was not chosen as a means of discouraging truck drivers from filing suit; instead, like in *Carnival Cruise Lines,* it was chosen because it is where Swift is headquartered, in order to ensure consistency and predictability on where Swift could be subject to claims.

Next, Smith attacks the reasonableness of the forum selection clause by noting that the accident occurred in Louisiana and many of the witnesses reside in Louisiana.[32] As noted by Swift, however, it is headquartered in Phoenix, and "[a]ll of the documents and records associated with the mentor program, the contractor program and other associated corporate records are all located in Arizona."[33] In light of *Carnival Cruise Lines,* this argument also is not strong enough to overcome the strong presumption in favor of Swift's forum selection clause.

**B.       Applicability of the Forum Selection Clause to the Instant Case**

---

[32] *Id.* at pgs. 3-4.  The plaintiff further advances that "an Arizona jury wanting to see the scene of the event would have to be transported over 1300 miles to do so."

[33] [Doc. 16] at pg. 3.

Smith also asserts that the forum selection clause is not applicable to his claims, as his claims revolve around Swift's negligent hiring of Klann, and not instead from anything mentioned the Contractor Agreement or the Mentor Addendum.[34]

In the Eastern District of Louisiana case, *Smith v. Lucent Techs., Inc.;* no. 092-0481, 2004 U.S. Dist. LEXIS 4074 (E.D. La., Mar. 16, 2004), Judge Africk discussed the standard to apply when assessing applicability of a forum selection clause:

> Before a court can consider enforcing a forum selection clause, "it first must decide whether the clause applies to the type of claims asserted in the lawsuit." *Terra Int'l, Inc. v. Mississippi Chem. Corp.,* 119 F.3d 688,692 (8th Cir. 1997)(determining the scope of a forum selection clause with respect to a motion to transfer brought pursuant to 28 U.S.C. 1404(a)); *see also Anselmo v. Univision Station Group Inc.,* 1993 U.S. Dist. LEXIS 428, 1993 WL 17173, at *1 (S.D.N.Y. Jan. 15, 1993)("In order to enforce a forum selection clause, the court must first determine whether the plaintiff's claims are ones contemplated under the terms of the clause."). In making that decision, this Court "must look to the language of the parties' contracts to determine which causes of action are governed by the forum selection clause." *Marinechance Shipping, Ltd. v. Sebastian,* 143 F.3d 216, 222 (5th Cir. 1998); *Anselmo,* 1993 U.S. Dist. LEXIS 428, [WL] at *1 ("The applicability of a forum selection clause is governed by objective consideration of the language of the clause.")(internal quotation and citation omitted). "If the substance of[the plaintiff's claims], stripped of their labels, does not fall within the scope of the clause[],the clause[] cannot apply." *Robyv. Corp. of Lloyd's,* 996F.2d 1353,1361 (2d. Cir. 1993).

*Id.* at *26-*27.

Looking to the language of the forum selection clause, it reads: "The parties agree that any legal proceeding between the parties *arising under, arising out of, or relating to* the relationship created by this Agreement, including arbitration proceedings discussed above, shall be filed and/or maintained in Phoenix, Arizona. . . ."[35]

In *Lucent,* Judge Africk interpreted similar language in a forum selection clause:

> "The word 'arising' connotes and denotes an origin or genesis of a thing." *Laserdynamics [v. Acer America Corp.,]* 209 F.R.D. [388],391 [(S.D. Tex.

---

[34] [Doc. [7-1] at pgs. 2-3.
[35] [Doc. 7-2] at ¶ 33, pg. 33 (emphasis added).

2002)]; *see also Coregis Ins. Co. v. American Health Found.,* 241 F.3d 123, 128 (2d Cir. 2001)... The term "related to" is typically defined more broadly and is not necessarily tied to the concept of a causal connection. Webster's Dictionary defines "related" simply as "connected by reason of an established or discoverable relation." Webster's Third New International Dictionary 1916 (1986). The word "relation," in turn, as "used especially in the phrase 'in relation to,'" is defined as a "connection" to or a "reference" to. *Id.* Courts have similarly described the term "relating to" as equivalent to the phrases "in connection with" and "associated with," *see Jackson v. Lajaunie,270* So.2d 859, 864 (La. 1972), and synonymous with the phrases "with respect to," and "with reference to," *see Phoenix Leasing, Inc. v. Sure Broad., Inc.,* 843 F. Supp. 1379, 1388 (D.Nev.1994), aff'd, 89 F.3d 846 (9th Cir.1996).

*Id.* at * 28-*29 (parentheticals omitted).

Looking at the face of the plaintiff's complaint, the undersigned is confident that his claims "relate to" the contract. The accident happened while Smith was training a mentee under the Mentorship Program. The Mentorship Program is expressly mentioned in his Mentor Addendum, which is a part of his Contractor Agreement with Swift. This connection is substantial enough in order to indicate clearly that Smith's claims do actually "relate to" the provisions of the forum selection clause. Smith's attempt to carve out an exception to the applicability of the forum selection clause based on the facts of his case thus fails.

### III.  Standard of Review on Forum Selection Clause

As the undersigned has found that the forum selection clause is valid and applicable, the next inquiry is whether the case should be dismissed under Rule 12(b)(3) and § 1406 or else transferred under § 1404(a), in accordance with the reasoning in the Fifth Circuit *Atlantic Marine.* Here, the Contractor Agreement's forum selection clause provides that any legal proceedings, including arbitration proceedings, must be filed and/or maintained in Phoenix Arizona.[36] The clause notes that personal jurisdiction will be proper in any state or federal court in Arizona,

---

[36] *Id.*

which, by itself, seems to indicate that a federal venue is available in Arizona, and thus transfer under § 1404(a) would be the proper mechanism.[37]

Importantly, however, the Contractor Agreement also contains an arbitration clause, which mandates that "[a]ll disputes arising under, arising out of or relating to [the Contractor] Agreement . . . shall be fully resolved by arbitration in accordance with Arizona's Arbitration Act and/or Federal Arbitration Act."[38]  Further, the results of arbitration will be "conclusive and binding" on the parties, and that "judgment may be entered on the award in any Arizona court having jurisdiction."[39]  Thus, while the forum selection clause itself does not indicate that an arbitral forum is the *only* possible forum, reading the arbitration clause in conjunction with the forum selection clause, it appears that if it is binding on the parties, an arbitral forum would indeed be the sole forum where the parties could resolve their dispute.  The case would only come before an Arizona court for the purpose of entering a judgment on the arbitration award.

The parties briefed the issue of whether the arbitration clause was binding on this dispute. Both parties acknowledge that courts have a strong presumption in favor of arbitration. *General Motors Corp. v. Pamela Equities Corp.*, 146 F.3d 242, 251 (5th Cir. 1988) (noting that "[a] presumption of arbitrability exists requiring that whenever the scope of an arbitration clause is fairly debatable or reasonably in doubt, the court should decide the question in favor of arbitration.").  Thus, the inquiry turns on whether the dispute between the parties in this case is so far outside the scope of the arbitration clause that it overcomes the strong presumption in favor of arbitration.

---

[37] *Id.*

[38] *Id.*, ¶ 25, pg. 33.

[39] *Id.*

The arbitration clause in the Contractor Agreement is broad. It provides that:

> . . . all disputes and claims arising under, arising out of, or relating to this Agreement, including an allegation of breach thereof, and any disputes arising out of or relating to the relationship created by the Agreement, including any claims or disputes arising under or relating to any state or federal laws, statutes or regulations, and any disputes as to the rights and obligations of the parties, including arbitrability of disputes between the parties, shall be fully resolved by arbitration in accordance with Arizona's Arbitration Act and/or the Federal Arbitration Act.[40]

Here, the arbitration clause allows for arbitration of disputes that "relate to" the Contractor Agreement  The Fifth Circuit has held that arbitration clauses which require arbitration of all disputes that "relate to" a contract are broad, and "are not limited to claims that literally 'arise under the contract,' but rather embrace all disputes between the parties having a significant relationship to the contract regardless of the label attached to the dispute." *Pennzoil Exploration & Prod. Co. v. Ramco Energy,* 139 F.3d 1061, 1067 (5th Cir. 1998).  Here, for the reasons also discussed *supra* on whether the forum selection clause is broad enough to cover this dispute, the undersigned also finds that it is clear that the arbitration clause is also broad enough to cover Smith's claims. His relationship with Klann and Swift arises from the Contractor Agreement. The accident happened while he was mentoring Klann, pursuant to the Mentorship Addendum. Thus, Smith's claims must be subject to arbitration.

As the undersigned has found that the Contractor Agreement mandates that any and all disputes relating to the contract are subject to "conclusive and binding" arbitration, in accordance with the reasoning in *Atlantic Marine,* the undersigned must dismiss this case under 28 U.S.C. § 1406 because this court lacks the power to transfer a case to an arbitral forum. *Texas Community Bank, NA. v. Dunn,* no. 09-3513, 2010 WL 3220652 (S.D. Tex., Aug. 13, 2010) (holding that "[w]hen a forum selection clause designates... an arbitral forum ... the proper remedy is

---

[40] *Id.*

dismissal."). If the plaintiff wishes to pursue his claims, he must undergo arbitration in Arizona.[41]

## CONCLUSION

For the reasons stated herein, Calcasieu's Motion to Dismiss will be granted, and Mr. Boyd's claims will be dismissed.

Lake Charles, Louisiana, this _7_ day of _____ Jan _____ 2013.

PATRICIA MINALDI
UNITED STATES DISTRICT JUDGE

---

[41] Because this court must dismiss pursuant to §1406, the undersigned will not reach the plaintiff's argument on the Interstate Motor Common Carrier Act.